MILLS COUNTY STATE BANK,
Appellee,

v.

Rafael A. ROURE and Jeannine M.
Roure, Appellants,

v.

MILLS COUNTY STATE BANK,
Hawkeye Bancorporation and
Paul D. Dunlap, Appellees.

No. 62803.

Supreme Court of Iowa.

April 23, 1980.

Lex Hawkins and Glenn L. Norris of
Hawkins & Norris, Des Moines, and Edward
E. Eaton, Jr., Sidney, for appellants.

William J. Koehn of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, James A. Thomas of Thomas, McGee & Thomas, Glenwood, Michael O. Johanns of Peterson, Bowman & Johanns, Lincoln, Neb., and Emmet Tinley of Stuart, Tinley, Peters, Thorn, Smits & Sens, Council Bluffs, for appellees.

Considered by REYNOLDSON, C. J., and HARRIS, ALLBEE, McGIVERIN and LARSON, JJ.

LARSON, Justice.

This controversy arose out of Dr. Roure's indebtedness to the Mills County State Bank, which had financed his construction of a medical clinic and the purchase of two tracts of unimproved land. Actions in foreclosure and for attachment were commenced by the bank, and the defendant responded with a counterclaim for malicious prosecution and abuse of process. The bank's claims were dismissed pursuant to a settlement, and the bank was granted summary judgment on the counterclaims. Dr. Roure, as defendant-counterclaimant, appeals from the order of summary judgment. We affirm in part, reverse in part and remand.

In early 1974, four of Dr. Roure's obligations to the bank were consolidated. They included (1) a $10,000 demand note secured by a purchase-money mortgage on the unimproved land, (2) a $14,000 demand note secured by a purchase-money mortgage on other unimproved land, (3) an unsecured $6,936.93 note and (4) a $65,896.97 commercial loan secured by approximately $25,700 worth of personal property. These loans were consolidated into a single $95,540.35 obligation with a maturity date of February 20, 1975. In addition to the existing mortgages, Dr. Roure executed an additional mortgage on the clinic and pledged the clinic's inventory and accounts to secure this obligation.

The monthly payment provided for in the new note did little more than meet the accruing interest. Therefore, a loan agreement was executed contemporaneously with the making of this note setting out alternative methods of reducing the indebtedness.

Dr. Roure was to refinance his home "at no more than 8% interest," refinance the medical clinic and his apartment complex and sell the two tracts of unimproved land and 1000 shares of stock. The proceeds were to be applied to the principal of the loan. The loan agreement provided further that the loan was "subject to renewals of the then existing balance until fully paid provided the [aforementioned] terms are met."

The year of 1974 did not provide a favorable economic climate, and the only term of the agreement Dr. Roure was able to meet was the sale of the stock. Nevertheless, as of February 7, 1975, Mills County State Bank planned to renew the note. Shortly before the maturity date of the loan, Dr. Roure requested a transcript of his loan payments, which revealed a $1080.04 error in the bank's favor. The bank readily corrected the error, but it was brought to the attention of the Iowa Department of Banking anyway. A March 5 meeting between Dr. Roure and the bank's officers was scheduled to discuss this error and renewal of the loan. The meeting was heated and short-lived; by its end the bank was committed to foreclosing their mortgages.

In its initial petition, the bank alleged that the failure of Dr. Roure to meet the terms of the loan agreement constituted a default and entitled them "to declare all unpaid indebtedness immediately due and payable." Dr. Roure answered that he was excused from performing the conditions because their performance was rendered impossible by an unfavorable economic climate which was unanticipated at the time of the agreement. The bank then amended its petition to assert that the terms of the loan agreement were not contractual in nature but, rather, were only indicia of whether the note would be worthy of renewal. It asserted that Dr. Roure's failure to fulfill the terms of the agreement caused it to "believe itself insecure and [able] to elect to declare that the entire amount is immediately due and payable" under the provisions of the security agreements. Dr. Roure answered that there was "no factual basis for [Mills County State Bank] to consider itself

insecure and in danger of losing its security."

The bank then filed an application for attachment of the clinic, one of the unimproved properties, the clinic inventory and accounts and all other non-exempt personal property of Dr. Roure. After hearing, Dr. Roure was able to get the attachment of his household goods vacated because the value of the other attached goods already exceeded 150% of the bank's claim. *See* § 639.7, The Code.

Dr. Roure counterclaimed in four divisions that (1) the foreclosure action constituted malicious prosecution, (2) the foreclosure action constituted abuse of process, (3) the excessive attachment constituted abuse of process and (4) the "proceedings for a personal judgment against [Mrs. Roure who had not signed any of the promissory notes] were instituted maliciously, abusively and for the purpose of inflicting injury upon her . . . ." At this point he brought in Hawkeye Bancorporation and Mr. Dunlap, its president, and sought discovery of documents from the bank.

Dr. Roure sold one of the tracts of unimproved land and applied $10,000 of the proceeds to his obligation to the bank. He was able to negotiate a sale of his clinic for $205,000. The bank released its encumbrance on the clinic and equipment; Dr. Roure sold them, and applied the proceeds to completely satisfy his indebtedness to the bank. The bank then dismissed its petition, leaving only Dr. Roure's counterclaim to be litigated.

The bank filed a motion for summary judgment, which was consolidated for hearing with Dr. Roure's motion to produce. Summary judgment was granted on each division, and the motion to produce was denied as moot. Judgment was granted on each cause of action for the bank.

Dr. Roure alleges many grounds in attacking the trial court's ruling. We believe resolution of the following issues is necessary: (1) Were defendants entitled to judgment as a matter of law on the claim of malicious prosecution? (2) Were defendants entitled to judgment as a matter of law on the claims of abuse of process?

I. *Malicious prosecution.* The trial court granted summary judgment on this claim both on the ground that there was no termination of the original proceeding favorable to Dr. Roure and that the damages he asserted did not meet the "special injury" rule set down in our prior cases. We believe defendants were entitled to judgment on the first ground and, therefore, have no need to address the second.

█ "The basis of an action for malicious prosecution consists of the wrongful initiation of an unsuccessful civil or criminal proceeding with malice and without probable cause." *Sarvold v. Dodson*, 237 N.W.2d 447, 448 (Iowa 1976). While that is the essence of the tort, our cases recognize six distinct elements of the cause of action: (1) a previous prosecution, (2) instigation or procurement thereof by defendant, (3) termination thereof by an acquittal or discharge of plaintiff, (4) want of probable cause, (5) malice in bringing the prosecution on the part of the defendant and (6) damage to the plaintiff. *Id.* The third element has also been phrased as "terminat[ion] in favor of the person against whom they are brought." Restatement (Second) of Torts § 674(b) (1977).

The facts which led to the dismissal of the foreclosure action are not in dispute; dismissal followed Dr. Roure's payment of the accelerated note in full. We have said that "a compromise and settlement of [the original] suit by the payment of money, either upon [the original] defendant's procurement or by a settlement understandingly made and without duress, is a distinct admission of liability . . . , and the dismissal of that suit pursuant to such a settlement is not a termination thereof in defendant's favor, but, on the contrary, a distinct admission on his part that something is due." *White v. International Text Book Co.*, 156 Iowa 210, 221, 136 N.W. 121, 125 (1912); *accord*, Restatement (Second) of Torts § 660, comment c (1977) (wrongful prosecution of criminal proceedings; made applicable to wrongful prosecution of civil proceedings by § 674, comment j).

■ Appellant argues that the element of favorable disposition was satisfied because "[t]he litigation terminated in favor of plaintiffs on two occasions . . . ." Those occasions were, he argues, when the first claim was "voluntarily abandoned" upon the bank's amendment of its petition and when the bank "voluntarily dismissed its amended petition after the appellant was forced to pay off the entire indebtedness contrary to the [loan] agreement. . . ."

As to the first ground for arguing that he had obtained a favorable disposition, the appellant argues that the bank's amendment to its petition was prompted by the realization that the original cause of action was vulnerable to a valid defense. The abandonment of the original theory by the bank was, he argues, a disposition favorable to him. While recognizing that an abandonment might in some cases be such a favorable termination, it was not so here. The original vehicle for pursuing the claim may have been abandoned, but the claim itself was not.

In support of his second ground, Roure argues that the dismissal by the bank of all claims against him generated a fact issue "as to whether the appellant entered a compromise and settlement which resulted in the dismissal or whether the dismissal was evidence of lack of probable cause . . ." We do not believe, however, that reasonable minds could reach a result contrary to that of the trial judge under these circumstances. That conclusion was that it was not a compromise, but was in fact payment in full by the bank's debtor. This settlement in lieu of trial, is not the kind of favorable termination envisioned by the Restatement or our cases. The appellant paid the full amount demanded in the bank's suit. It could not have been a more unfavorable result for Roure, unless, perhaps, the matter had proceeded through trial and he had been forced to pay court costs and statutory attorney's fees in addition to the amount of the bank's prayer.

Since the foreclosure action was dismissed under these circumstances, Dr. Roure may not use that action as a basis for a malicious prosecution claim. *Accord, Miller v. Jamaica Savings Bank,* 50 A.D.2d 865, 865, 377 N.Y.S.2d 89, 90 (1975); *Pagliarulo v. Pagliarulo,* 30 A.D.2d 840, 840, 293 N.Y. S.2d 13, 15 (1968).

■ II. *Abuse of process.* In granting judgment on this claim, the trial court said:

The essence of the tort of abuse of process lies in the misuse or perversion of regularly issued process, once issued, to achieve some collateral purpose not justified by the nature of the process. It is the conduct which occurs subsequent to the issuance of the process, rather than the motive or intent in first obtaining the process, which is important.

Since no such subsequent acts were alleged, summary judgment was granted. We believe the trial court erred in holding that subsequent conduct is required to support a cause of action for abuse of process.

In *Sarvold v. Dodson,* 237 N.W.2d at 448–49, we approved of section 682 and comment a of that section of the Restatement of Torts (1938), which provided:

One who uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby.

[Comment] a. The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this Section.

These provisions were retained virtually intact in the second Restatement. The trial court's ruling is undoubtedly founded on the presence of the term "subsequent" near the end of the comment. We do not believe the tort requires any subsequent action; nor do our cases support such a requirement. In *Sarvold*, there was no indication of subsequent use of the process; the tort was premised on the mere initiation of civil commitment proceedings. *Accord, Brody v. Ruby*, 267 N.W.2d 902, 906 (Iowa 1978) ("Plaintiff does not affirmatively allege improper use of original notice or other process in instituting the malpractice action.")

■ The existence of this cause of action recognizes that even in meritorious cases legal process may be abused. That abuse involves using the process to secure a purpose for which it is not intended. We can see no reason why there must be subsequent activity to support the cause of action. Such activity may be very probative in determining the intent to abuse; however, there need not be such a subsequent action to commit the tort. To rule otherwise would protect the tortfeasor when the abuse is most effective—where the issuance of the process alone is sufficient to accomplish the collateral purpose.

■ The defendants to the counterclaim ask us to apply the special injury rule to the tort of abuse of process. That rule originates from "a public policy determination resolved in favor of allowing litigants access to courts to resolve controversies without fear of a counteraction for damages based on alleged malice in event of an adverse decision . . . ." *Brody v. Ruby*, 267 N.W.2d at 905. The rule limits the parties who may sue for malicious prosecution to those who have suffered "an arrest, seizure of property, or a special injury . . which would not necessarily result in all suits prosecuted to recover for like causes of action." *Id.* at 904.

■ We need not decide whether the special injury rule should be extended to this tort. The petition alleges that as a result of the defendant's actions "the medical practice of the Plaintiff, Rafael A. Roure, was sufficiently impaired to compel its abandonment and his taking a Commission in the United States Navy to support his family." Loss of practice or income is sufficient to meet the special injury requirement. *Id.* at 905.

The trial court's grant of summary judgment on the abuse of process claims must, therefore, be reversed.

III. *Other issues.* (a) Dr. Roure argues that summary judgment should not have been granted in this case because the facts set out in his petition would support a recovery under theories not articulated in the petition. His theory is that facts had been alleged in his counterclaim which would, under the theory of notice pleading, show his entitlement to *some* relief, even if not under the theories of malicious prosecution or abuse of process. Such theories, he argues, would include wrongful attachment and "tortious interference with prospective economic advantage," and that these issues would require a factual hearing to be resolved. We need not address this issue, because we remand for trial under the theory of abuse of process. The appellant may seek leave to amend, or if he believes these theories are already in the case under his notice-pleading theory, he may choose to pursue them under the present state of his pleadings. We express no view as to whether such amendment should be allowed by the trial court nor whether these unarticulated theories may be litigated under his present counterclaim.

(b) The appellant also asks us to resolve the discovery issue, which concerns his request for information which the bank contends falls under its attorney-client privilege. There has been no ruling on this issue by the trial court, which concluded it was moot in view of the summary judgment. This matter is not moot under our disposition of the appeal, and if presented should be addressed by the trial court upon remand.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.