Ronald G. SISLER and Darlene Sisler, Appellants,

v.

CITY OF CENTERVILLE, Iowa, Dennis West, Joseph B. Treloar and Rick Hackert, Appellees.

No. 83–1545.

Supreme Court of Iowa.

July 31, 1985.

Marvin V. Colton, Albia, for appellants.

C.K. Pettit, Bloomfield, for appellees City of Centerville, West and Treloar.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN, and WOLLE, JJ.

McCORMICK, Justice.

This appeal involves a malicious prosecution claim arising out of the prosecution of plaintiff Ronald G. Sisler for the alleged theft of a coonhound named Ralph. Ronald and his wife, plaintiff Darlene Sisler, contend the trial court erred in overruling their motion to amend their petition shortly before trial and in directing a verdict for defendants at trial. The court of appeals reversed the trial court and we granted further review. Because we find no merit in plaintiffs' contentions, we vacate the decision of the court of appeals and affirm the district court.

Plaintiffs' petition was in three divisions. In the first division, Ronald sought recovery of actual and punitive damages on a theory of malicious prosecution. In the second division, Ronald and Darlene sought recovery of actual and punitive damages on a theory of wrongful search of their home. In the third division, they sought recovery of actual and punitive damages for abuse of process. Defendants Dennis West and Joseph D. Treloar were police officers for defendant City of Centerville at the time of the material events, and defendant Rick Hackert was owner of the coonhound.

At trial plaintiffs' counsel characterized the first two divisions of the petition as being based on malicious prosecution. In

ruling on defendants' motion for directed verdict, the trial court treated both divisions as asserting that basis for recovery. Plaintiffs now contend that the second division was based on "deprivation of rights."

By identifying the theory of the second division at trial as malicious prosecution, plaintiffs are now precluded from relying on a different theory, and we will not attempt to determine whether the second division might have stated a separate cognizable cause of action. Moreover, even under plaintiffs' present contention, our disposition of the question relating to the first division answers their contention relating to the second division. The third division of the petition is not involved in this appeal, because plaintiffs concede the evidence did not support it. Nor do plaintiffs raise any issue concerning defendant Hackert. This appeal thus involves only the trial court's ruling denying plaintiffs' motion to add a new claim against defendants West, Treloar and City of Centerville and the court's ruling directing a verdict for them on the malicious prosecution claim.

I. *The motion to amend.* Fourteen minutes before trial was scheduled to begin, plaintiffs filed a motion for leave to amend their petition to add a claim against defendants under 42 U.S.C. section 1983 (1981). The trial court overruled the motion, and plaintiffs contend the court abused its discretion in doing so. The court of appeals agreed with plaintiffs, but we do not.

The present action was commenced in April 1981. Plaintiffs brought a separate action against defendants West and Treloar in federal court under 42 U.S.C. section 1983 in October 1982. Upon motion by the defendants, the federal district court, 570 F.Supp. 1, dismissed the federal action in February 1983 on abstention grounds, noting the pendency of the state court case in which the federal statutory claim could be joined. Instead of then seeking amendment of their state petition, plaintiffs appealed the federal district court decision. The decision was affirmed by the United States Court of Appeals for the Eighth Circuit on September 2, 1983. Plaintiffs finally proffered their amendment in the present case just before commencement of trial on September 27, 1983.

General principles governing our review of the trial court's ruling are well settled. They are summarized in *Johnston v. Percy Construction, Inc.,* 258 N.W.2d 366, 370–71 (Iowa 1977). In arguing that an abuse of discretion should be found here, plaintiffs allege that the amendment would not materially change the issues and would not have surprised defendants. They assert that only one new element of proof would be introduced, their duty under their section 1983 claim to prove the officers acted under color of state law. They also note that defendants had notice they intended to pursue the federal statutory claim because of the federal litigation. Through this argument they seek to establish an exceptional situation in which a trial court would be held to have abused its discretion in denying an amendment adding a new theory of action on the eve of trial.

We believe the ruling was within the court's discretion. Two pretrial conferences were held in this case. At the first, it was ordered that pleadings would be closed on February 28, 1983. The federal district court dismissed plaintiffs' federal action on February 23, 1983, several days before the close of pleadings in the state case. The second pretrial conference was held on September 1, 1983, and the first pretrial order was confirmed. Plaintiffs waited until after the federal court of appeals decision before offering the amendment. Thus they deliberately waited to file the proposed amendment until more than six months after the deadline for amending their petition despite the federal district court decision advising them before the deadline that the claim should be joined with their state action.

Moreover, the amendment would have created a problem greater than merely introducing one new element in their case against the officers. Plaintiffs sought judgment against the city as well as the

officers in the proffered amendment. In order to recover from the city, plaintiffs would have to prove the city had a forbidden rule or procedure which was "the moving force of the constitutional violation...." *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611, 618 (1978). The city could not be held liable merely on a theory of respondeat superior. *See Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509, 521 (1981); *Cunha v. City of Algona*, 334 N.W.2d 591, 596 (Iowa 1983). In this situation, the officers and city might urge conflicting defenses. Because they were represented by the same attorney, their attorney would have an obvious conflict of interest.

We find no abuse of discretion in the trial court's ruling denying the amendment.

■ II. *The directed verdict.* The elements of a malicious prosecution claim are (1) a previous criminal prosecution, (2) instigation of the prosecution by the defendant, (3) termination of the prosecution favorably to plaintiff, (4) want of probable cause, (5) malice of defendant in bringing the prosecution, and (6) damage to the ' plaintiff. *Mills County State Bank v. Roure*, 291 N.W.2d 1, 3 (Iowa 1980). In this case the trial court questioned whether the evidence would support the third element but directed the verdict based on lack of substantial evidence on the fourth and fifth elements. We rest our affirmance on the existence of probable cause for the prosecution and thus consider only the fourth element.

■ Probable cause exists when " 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879, 1890 (1949). In the context of a civil action for malicious prosecution the existence of probable cause is determined under the following standard:

One who initiates or continues criminal proceedings against another has probable cause for doing so if [the accuser] correctly or reasonably believes

(a) that the person [accused] has acted or failed to act in a particular manner, and

(b) that those acts or omissions constitute the offense that [the accuser] charges against the accused, and

(c) that [the accuser] is sufficiently informed as to the law and the facts to justify [the accuser] in initiating or continuing the prosecution.

*Restatement (Second) of Torts* § 662 at 423 (1977). In reviewing a directed verdict for the defendants, we view the evidence in the light most favorable to plaintiffs. *See Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984). We recite the relevant evidence.

On Sunday evening, October 26, 1980, Rick Hackert and his brother-in-law Robert Schwab discovered that Hackert's "Blue Tick Walker" coonhound named Ralph was missing from the yard of the Hackert home in Centerville where he had been chained. Ralph was full grown, black and white, with a white spot on his left ear and scars on his nose and ears. Hackert checked with the dogcatcher on Monday and found he did not have the dog. Then he placed an ad for the dog in the lost-and-found section of the Centerville newspaper.

On Tuesday, October 28, Robert G. Clark of Centerville came to Hackert's home in response to the ad. He told Hackert he had seen a dog answering Ralph's description running loose at a flea market in the Pamida parking lot in Centerville on Sunday afternoon. The Sislers, who lived in Albia, had a display at the flea market. Clark, who knew the Sislers, said he saw the son of the Sislers put a rope around the dog's neck and later heard Ronald Sisler tell the boy to tie the dog to the truck. When Clark left the flea market he saw the dog tied under the topper on the back of the Sisler pickup truck.

On October 29, the day after his conversation with Clark, Hackert went to the Sisler residence in Albia accompanied by Schwab. He said he heard a dog bark while he was still in the car and recognized Ralph's bark. He walked to the Sisler driveway and observed Ralph tied up in the backyard. The dog responded when his name was called and Hackert had no doubt that it was Ralph. He knocked at the door of the Sisler home and Ronald Sisler answered the door. Hackert told Ronald the dog was his, but Ronald denied it and asserted he had purchased the dog at an auction in Corydon. Hackert told Ronald he was "going to the law," and Ronald said, "Go get them."

While Hackert went to get the Albia police, Schwab stayed to watch the dog. The Albia police told Hackert he would have to take his complaint to the Centerville police. Hackert picked up Schwab and went to the Centerville police station. There he was told he would have to see the county attorney. Subsequently he and Schwab told their story to the county attorney and later to officers West and Treloar.

Treloar called the Albia police and asked them to drive by the Sisler residence and, if they saw the dog, to take a picture of it. The Albia police later reported that they went to the residence and did not see a dog tied in the yard. Officers Treloar and West talked to Robert Clark, and Clark told them what he knew about the missing dog.

With this information in hand, Treloar prepared a complaint charging Ronald Sisler with theft in the second degree in violation of Iowa Code section 714.2(2) (1979). In his affidavit, Treloar stated:

Mr. Rick Hackert told me his dog, a Walker coonhound, had gotten loose and was missing. He said Mr. Robert Gussie Clark notified him that his dog was in the possession of Ronald Gordon Sisler in Albia.

Mr. Hackert told me he went to Mr. Sisler's residence in Albia, saw his dog tied in the yard and asked for it. He told me Mr. Sisler said he bought this dog in Corydon at an auction.

I talked to Mr. Robert Gussie Clark who said he saw Mr. Sisler's son catch this dog in the Pamida parking lot and the dog was later tied up in Mr. Sisler's trailer. Mr. Hackert told me the dog is a valuable hunting dog and worth $1,000.

Treloar also prepared an application for a warrant to search the Sisler residence and outbuildings. The complaint and application were presented to a magistrate by officers West and Treloar at approximately 10:30 p.m. on October 29. After receiving sworn testimony from Treloar, the magistrate made findings of probable cause and issued arrest and search warrants.

The officers went to the Sisler residence at approximately midnight the same date. They searched the premises but did not find the dog. Ronald Sisler was arrested and taken to jail pursuant to the arrest warrant. On the next day, October 30, an unidentified man brought Ralph to the Hackert residence in a pickup truck, reporting he had found him running loose in Centerville on that date.

The charge against Sisler subsequently went to preliminary hearing. On that occasion, when testimony showed that Ralph was more than six months old and unlicensed, the county attorney moved that the charge be dismissed on the ground that in those circumstances Code section 351.25 provided that the dog was deemed not to be property. The magistrate sustained the motion, and plaintiffs later brought the present action.

In arguing they adduced substantial evidence that the prosecution was instigated without probable cause, plaintiffs lean heavily on their theory that an unlicensed dog more than six months old cannot be the subject of larceny. Like the court of appeals, we find this theory is incorrect.

■ Code section 351.25 provides that all dogs under six months of age, and all dogs over six months of age wearing a collar with a valid license attached, are property. Unlicensed dogs over six months of age, according to the statute, "shall not be deemed property." We believe this provi-

sion applies only to the licensing and regulatory provisions of chapter 351. Prior to enactment of section 351.25, this court held that dogs were chattels subject to larceny as the subjects of larceny were delineated in the criminal law. *See Hamby v. Samson,* 105 Iowa 112, 115, 74 N.W. 918, 919 (1898). The statutory definition of property for purposes of larceny was not changed when section 351.25 was enacted. *See* Iowa Code § 13005 (1924).

The holding in *Hamby* is even more strongly supported under the present criminal code. Section 702.14 defines "property":

> "Property" is anything of value, whether publicly or privately owned. The term includes both tangible and intangible property, labor and services. The term includes all that is included in the terms "real property" and "personal property."

In addition, section 702.1 makes this definition controlling: "Wherever a term, word or phrase is defined in the criminal code, such meaning shall be given wherever it appears in the Code, unless it is being specially defined for a special purpose." Because a dog is tangible and may have value, a dog plainly may be the subject of larceny whether licensed or not. Plaintiffs are thus mistaken in asserting absence of probable cause on the ground Ralph could not be the subject of larceny.

■ When the remaining circumstances are examined, even in the light most favorable to plaintiffs, we believe they establish probable cause for the prosecution as a matter of law. Hackert told the officers he saw the dog in the possession of Ronald Sisler who refused to return it to him and who falsely claimed to have purchased the dog at an auction in Corydon. Clark told the officers he had seen a dog answering Ralph's description taken by the Sislers from Centerville on the afternoon of the day he was later discovered to be missing. We find that the officers, as a matter of law, had probable cause for instigating and continuing the prosecution in accordance with the applicable standard.

Plaintiffs argue that a jury question was engendered by the circumstances that the Albia officers had not seen the dog in the yard of the Sisler home, West and Treloar lacked evidence the dog was inside the home, and West and Treloar failed to investigate the dog's value further. Probable cause, however, is established by less evidence than would be necessary to convict. At the time they brought the charge against Ronald Sisler the officers knew of facts and circumstances, based on reasonably trustworthy information, that were sufficient to warrant a person of reasonable caution to believe that Ronald Sisler had committed the offense charged. The information came from persons claiming knowledge based on personal observation. The officers could reasonably believe Ronald lied to Hackert when caught red-handed with Ralph and then got rid of the dog before the premises were searched. It was more than a little suspicious that the dog Sisler claimed to own was not on his premises at the time of the search.

We agree with the trial court that plaintiffs presented insufficient evidence to generate a jury issue on the element of absence of probable cause for the prosecution. Because the directed verdict is adequately supported on this ground, we need not proceed further.

DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT AFFIRMED.