Terry J. HARRINGTON, Plaintiff,

v.

Matthew D. WILBER and
Pottawattamie County,
Iowa, Defendants.

Curtis W. McGhee, Jr., Plaintiff,

v.

Pottawattamie County, Iowa,
et al., Defendants.

Terry Harrington, individually and in
his capacity as the father of Nicole
Antoinette Harrington, Plaintiff,

v.

County of Pottawattamie, Iowa,
et al., Defendants.

Nos. 4:03–cv–90616 (LEAD CASE),
4:05–cv–00255, 4:05–cv–00178.

United States District Court,
S.D. Iowa,
Central Division.

Oct. 18, 2010.

David Stephen Baker, Fisher Patterson Sayler & Smith LLP, Overland Park, KS,

Michael A. Sciortino, City of Council Bluffs Legal Dept., Robert M. Livingston, Kristopher K. Madsen, Stuart Tinley Law Firm LLP, Council Bluffs, IA, for Defendants.

Anne F. Danaher, Kansas City, KS, pro se.

Stephen Dillard Davis, Steve Davis Law PC, Oak Brook, IL, Thomas P. Frerichs, Frerichs Law Office, Waterloo, IA, William H. Jones, Canel Davis & King, Chicago, IL, Larissa A. McCalla, Gerry L. Spence, Spence Shockey & McCalla, J. Douglas McCalla, Spence Law Firm, Mel C. Orchard, Spence Law Firm LLC, Jackson, WY, Alan O. Olson, Olson Law Office PC, Des Moines, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is a Motion for Summary Judgment, filed May 10, 2010, by the City of Council Bluffs (the "City"), Daniel Larsen ("Larsen"), and Lyle Brown ("Brown") (collectively "Defendants"). Clerk's No. 154. Curtis McGhee ("McGhee") and Terry Harrington ("Harrington") (collectively "Plaintiffs") each filed a resistance to the Motion on June 3, 2010. Clerk's Nos. 163 (McGhee), 177 (Harrington). Defendants filed a Reply on June 21, 2010. Clerk's No. 189. The matter is fully submitted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case has an extensive factual and procedural background that has been articulated repeatedly by the Court in past orders. In short summary, the present case is one of numerous cases pending in this Court that all arise from the investigation, prosecution, and conviction of Plaintiffs for the 1977 murder of John Schweer. In 2003, the Iowa Supreme Court vacated Harrington's first degree murder convic-

tion for the failure of the prosecution to turn over exculpatory evidence. Harrington was released from custody after serving approximately twenty-five years in prison. Given that McGhee's conviction would likely be reversed on the same basis as Harrington's, Pottawattamie County struck a deal whereby McGhee agreed to enter an *Alford* plea to second degree murder, in exchange for a sentence of twenty-five years with credit for time served. Since McGhee had already spent nearly twenty-six years in custody, he was released after entering his *Alford* plea on September 2, 2003.

On March 25, 2005 and on May 4, 2005, respectively, Harrington and McGhee filed lawsuits against law enforcement officers, prosecutors, and city and county entities, alleging various state law and civil rights violations. Case Nos. 4:05–cv–00178 (*Harrington v. County of Pottawattamie, et al.*); 4:05–cv–00255 (*McGhee v. Pottawattamie County, et al.*). While all claims against Pottawattamie County and the county prosecutors have now been resolved pursuant to a settlement agreement, *see* Clerk's No. 143, Plaintiffs' claims against the City, Larsen, and Brown remain pending. Specifically, Harrington still has the following claims pending against Defendants: Counts 1 and 2 (claims against Defendants for violation of 42 U.S.C. § 1983) and Count 3 (claims against Defendants for conspiracy under

42 U.S.C. § 1985(3)).[1] McGhee still has the following claims pending against Defendants: Counts 1 and 5 (claims against Larsen and Brown, in their individual capacities, for violation of 42 U.S.C. § 1983); Count 15 (a claim against Larsen and Brown for conspiracy under 42 U.S.C. § 1985(3)); Count 18 (a claim against the City of Council Bluffs for violation of § 1983); and Count 19 (a claim against the City of Council Bluffs for indemnity).[2] *See* Case No. 4:05–cv–00255, Clerk's No. 1.

## II. STANDARD FOR SUMMARY JUDGMENT

The term "summary judgment" is something of a misnomer.[3] *See* Hornby, D. Brock, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273 (Spring 2010). It "suggests a judicial process that is simple, abbreviated, and inexpensive," while in reality, the process is complicated, time-consuming, and expensive. *Id.* at 273, 281. The complexity of the process, however, reflects the "complexity of law and life." *Id.* at 281. "Since the constitutional right to jury trial is at stake," judges must engage in a "paper-intensive and often tedious" process to "assiduously avoid deciding disputed facts or inferences" in a quest to determine whether a record contains genuine factual disputes that necessitate a trial. *Id.* at 281–82. Despite the seeming inaptness of the name, and the desire for some in the plaintiffs' bar to be

---

1. On September 16, 2010, the Court dismissed Count 4 (claims against Larsen and Brown for intentional infliction of emotional distress), Count 5 (claims against Larsen and Brown for malicious prosecution), and Count 6 (claims against Defendants for Nicole Harrington's loss of parental consortium) for failure to comply with the applicable statute of limitations. Clerk's No. 214.

2. On September 16, 2010, the Court dismissed Counts 2 and 6 (claims against Larsen and Brown for malicious prosecution), Counts 3 and 7 (claims against Larsen and

Brown for false arrest and imprisonment), and Counts 4 and 8 (claims against Larsen and Brown for intentional infliction of emotional distress) for failure to comply with the applicable statute of limitations. Clerk's No. 214.

3. Judge D. Brock Hornby, a District Court judge for the District of Maine, convincingly suggests that the name "summary judgment" should be changed to "motion for judgment without trial." Hornby, D. Brock, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273, 284 (Spring 2010).

rid of it, the summary judgment process is well-accepted and appears "here to stay." [4] *Id.* at 281. Indeed, "judges are duty-bound to resolve legal disputes, no matter how close the call." *Id.* at 287.

■ Federal Rule of Civil Procedure 56(b) provides that "[a] party against whom relief is sought may move at any time ... for summary judgment on all or part of the claim." "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.,* 541 F.2d 207, 209 (8th Cir.1976) (citing *Windsor v. Bethesda Gen. Hosp.,* 523 F.2d 891, 893 n. 5 (8th Cir.1975)). The purpose of summary judgment is not "to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). Rather, it is designed to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.,* 545 F.2d 1127, 1129 (8th Cir. 1976) (citing *Lyons v. Bd. of Educ.,* 523 F.2d 340, 347 (8th Cir.1975)).

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment upon motion after there has been adequate time for discovery. Summary judgment can be entered against a party if that party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriately granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and that the moving party is therefore entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence, nor does it make credibility determinations. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers,* 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.") (citing *Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc.,* 398 F.Supp. 1047, 1055 (E.D.N.Y.1975)).

In a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex,* 477 U.S. at 323, 106

---

**4.** Judge Hornby notes that over seventy years of Supreme Court jurisprudence gives no hint that the summary judgment process is unconstitutional under the Seventh Amendment. *Id.* at 281 (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) and *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct.

724, 88 L.Ed. 967 (1944)). While he recognizes that not much can be done to reduce the complexity of the summary judgment process, he nonetheless makes a strong case for improvements in it, including, amongst other things, improved terminology and expectations and increased pre-summary judgment court involvement. *See id.* at 283–88.

S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the moving party has carried its burden, the nonmoving party must then go beyond its original pleadings and designate specific facts showing that there remains a genuine issue of material fact that needs to be resolved by a trial. *See* Fed.R.Civ.P. 56(e)(2). This additional showing can be by affidavits, depositions, answers to interrogatories, or the admissions on file. *Id.; Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

■ Courts do not treat summary judgment as if it were a paper trial. Therefore, a "district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). In a motion for summary judgment, the job of a court is only to decide, based on the evidentiary record that accompanies the moving and resistance filings of the parties, whether there really is any material dispute of fact that still requires a trial. *See id.* (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 and 10 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2712 (3d ed.1998)). It is the responsibility of the parties to provide the evidence necessary for this assessment. *Id.* at 921.

## III. LAW AND ANALYSIS

■ Plaintiffs' Complaints each contain allegations that Defendants lacked probable cause to believe that Plaintiffs were involved in Schweer's murder, but nonetheless opted to arrest and prosecute them for murder using fabricated evidence. Defendants argue that Plaintiffs' claims, to the extent they are based upon the absence of probable cause, fail as a matter of law. Specifically, Defendants assert that, at the time they arrested Plaintiffs, they had probable cause to believe that Plaintiffs had committed the crime of car theft. According to Defendants, they are entitled to qualified immunity from Plaintiffs' claims because the law requires only that, before making an arrest, an office have probable cause to believe that "*an offense* has been committed," not that the officer have probable cause to believe that the *specific offense* ultimately charged has been committed. Defs.' Br. at 4–9.

Though the Eighth Circuit does not appear to have squarely addressed the issue, other courts have squarely rejected the premise upon which Defendants rely:

As several of our sister circuits have concluded, probable cause to believe an individual committed one crime—and even his conviction of that crime—does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge. *See Johnson v. Knorr,* 477 F.3d 75, 83–85 (3d Cir.2007); *Uboh v. Reno,* 141 F.3d 1000, 1005 (11th Cir.1998); *Posr v. Doherty,* 944 F.2d 91, 100 (2d Cir.1991); *see also Rivera–Marcano v. Normeat Royal Dane Quality A/S,* 998 F.2d 34, 38 (1st Cir.1993). In this respect, a malicious prosecution claim is treated differently from one for false arrest: whereas probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or

different charges for which there was no probable cause, *see Devenpeck v. Alford, supra*, 543 U.S. [146,] 153[, 125 S.Ct. 588, 160 L.Ed.2d 537] [2004]; *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 762 (7th Cir.2006), probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking. *Johnson*, 477 F.3d at 84–85. Logic supports the distinction. An arrested individual is no more seized when he is arrested on three grounds rather than one; and so long as there is a reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed. *See Devenpeck*, 543 U.S. at 153–55[, 125 S.Ct. 588]; *Johnson*, 477 F.3d at 84. But when it comes to prosecution, the number and nature of the charges matters: the accused must investigate and prepare a defense to each charge, and as the list of charges lengthens (along with the sentence to which the accused is exposed), the cost and psychic toll of the prosecution on the accused increase. *See id.* at 84, 85; Jacob Paul Goldstein, Note, *From the Exclusionary Rule to a Constitutional Tort for Malicious Prosecutions*, 106 Columbia L.Rev. 643, 645 (2006) (quoting *Savile v. Roberts*, 91 Eng. Rep. 1147, 1149–50 (K.B. 1698) (Holt, C.J.) (describing the various injuries underlying a malicious prosecution claim)). At the same time, when an officer prepares and signs a criminal complaint, he typically will have more of an opportunity to reflect on the nature and ramifications of the accused's conduct than he did in making the arrest. It is reasonable to

demand that each charge that a police officer elects to lodge against the accused be supported by probable cause. Otherwise, police officers would be free to tack a variety of baseless charges on to one valid charge with no risk of being held accountable for their excess.

*Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682–83 (7th Cir.2007) (some internal citations omitted); *see also Vance v. Nunnery*, 137 F.3d 270, 274 (5th Cir.1998) ("In this circuit, a police officer may not obtain qualified immunity for an unconstitutional warrantless arrest by claiming that he could have arrested the plaintiff for another offense unless two conditions are satisfied. First, the charged and uncharged offenses must be 'related.' Second, the arresting officer must demonstrate that there was arguable probable cause to arrest the plaintiff for the uncharged related offense."); *Gasho v. United States*, 39 F.3d 1420, 1428 n. 6 (9th Cir.1994) (finding that the existence of probable cause for a "closely related" uncharged offense *may* provide a basis for qualified immunity, but only where the uncharged offense "involves the same conduct for which the suspect was arrested"); *Allen v. City of New York*, 480 F.Supp.2d 689, 715 (S.D.N.Y.2007) ("Where there is probable cause to arrest a criminal defendant for one crime, but the defendant is prosecuted for another, a finding of probable cause to arrest does not suffice to show probable cause to prosecute.").

 The Court finds the reasoning and conclusions in the cited case law compelling. Indeed, the notion that *any* probable cause will suffice to defeat a malicious prosecution claim is at odds with Iowa malicious prosecution law.[5] Under Iowa

**5.** When, as here, a district court discusses a § 1983 cause of action by analogizing it to a claim of malicious prosecution, it is appropriate for the court to look to the respective state law for the elements of the tort. *See, e.g., Holmes*, 511 F.3d at 683 (looking to state law

for the elements of a § 1983 claim founded on malicious prosecution); *Cornejo v. Bell*, 592 F.3d 121, 129 (2d Cir.2010); *Izen v. Catalina*, 398 F.3d 363, 366 (5th Cir.2005) (holding that, in order to prevail, a § 1983 plaintiff

law, a malicious prosecution claim requires a plaintiff to demonstrate an absence of probable cause. *See Wilson v. Hayes,* 464 N.W.2d 250, 259 (Iowa 1990) (stating the elements of the tort of malicious prosecution as: "(1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of defendant for bringing the prosecution, and (6) damage to plaintiff." (internal quotations omitted)). To defeat a plaintiff's malicious prosecution claim by demonstrating that probable cause actually existed, a defendant must show, among other things, that the acts or omissions of the arrested party "constitute *the offense that the accuser charges against the accused.*" *Fuller v. City of Cedar Rapids,* Nos. 0–2009 & 98–0467, 2000 WL 1868966, at *2–3 (Iowa Ct.App. Dec. 22, 2000) (emphasis added) (citing *Sisler v. City of Centerville,* 372 N.W.2d 248, 251 (Iowa 1985)).

In this case, the offense charged against the Plaintiffs was murder, a charge wholly distinct from, and not "closely related" to, the crime of car theft. Moreover, as discussed in an Order issued October 8, 2010, Plaintiffs' federal claims are all in the nature of malicious prosecution, not false arrest or false imprisonment. *See* Clerk's No. 224 (finding that since Plaintiffs were arrested pursuant to warrants, they "were never detained *without* legal process [and thus] have no cognizable claims for false

arrest or false imprisonment"). Thus, even assuming that Defendants, in fact, had probable cause to arrest Plaintiffs for car theft, this fact does not defeat Plaintiffs' malicious prosecution claims, for the reasons articulately stated in *Holmes.* With respect to whether probable cause existed to believe that Plaintiffs had committed murder, this Court has previously held that a reasonable jury *could* determine that Defendants lacked probable cause to believe that Plaintiffs were in any way involved in Schweer's murder. *See McGhee v. Pottawattamie County, Iowa,* 475 F.Supp.2d 862, 890 (S.D.Iowa 2007). Accordingly, Defendants claim for summary judgment is without merit.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment (Clerk's No. 154) is DENIED.

IT IS SO ORDERED

---

must satisfy the elements of the state law claim of malicious prosecution and also establish a constitutional violation); *see also Willis v. City of Los Angeles,* 57 Fed.Appx. 283, 285–86 (9th Cir.2002); *Ford v. City of Rockford,* No. 92–3757, 1995 WL 94911, at *1 (7th Cir. Mar. 6, 1995); *Lippay v. Christos,* 996 F.2d 1490, 1502 (3d Cir.1993); *Hager v. U.S. Steel Corp.,* No. 86–1074, 1987 WL 36308, at *2 (4th Cir. Jan. 30, 1987).