USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1662 JOSE A. RIVERA-MARCANO, ET AL., Plaintiffs, Appellants, v. NORMEAT ROYAL DANE QUALITY A/S, (formerly NORMEAT-HOLDING & EXPORT), Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Hector Cuebas Tanon with whom Vicente & Cuebas was on brief for ____________________ _________________ appellants. Ivan R. Fernandez-Vallejo with whom Raymond E. Morales and Brown __________________________ ___________________ _____ Newsom & Cordova were on brief for appellee. ________________ ____________________ July 13, 1993 ____________________ CAMPBELL, Senior Circuit Judge. The district court ____________________ granted summary judgment for appellee on appellants' claim of malicious prosecution. Finding no error, we affirm. I. I. Appellant Jose A. Rivera Marcano ("Rivera") is the sole owner and operator of J.A.R. Enterprises, Inc. ("J.A.R."), a brokerage and distribution firm in Puerto Rico. Beginning in 1983, J.A.R. served as the exclusive broker in Puerto Rico of the luncheon meat and other food products manufactured by appellee Normeat Royal Dane Quality A/S ("Normeat"), a corporation with its principal place of business in Denmark. Normeat normally shipped merchandise to J.A.R. on a credit basis. J.A.R. would then transport the merchandise to customers in Puerto Rico and bill them directly. After customers paid J.A.R. usually by means of checks made payable to either Normeat or J.A.R. J.A.R. would deposit the money in its bank account, keep three percent of the amount as a sales commission, and remit the balance to Normeat. Ordinarily, J.A.R. had an account payable to Normeat with an outstanding balance of hundreds of thousands of dollars. Sometime in 1987, Normeat's new management informed Rivera that it would no longer extend credit for shipments to J.A.R. and demanded immediate payment of J.A.R.'s outstanding account balance of approximately $500,000. Rivera protested -2- the change, informing Normeat that the new policy contradicted long-standing practice and created financial difficulties for J.A.R. Negotiations between the parties failed to resolve the dispute, and Normeat notified Rivera in October 1987 that it would cease shipping merchandise to J.A.R. and would proceed to collect all sums due through appropriate legal channels. Two years later, in June 1989, Ken Rasmussen, deputy managing director of Normeat, gave a sworn statement to a state prosecutor in the Puerto Rico Department of Justice regarding Rivera's failure, as owner and operator of J.A.R., to turn over one or more customer payments allegedly belonging to Normeat. The record contains neither a copy of Rasmussen's sworn statement nor anything else showing what Rasmussen told the prosecutors. The Puerto Rico Department of Justice conducted an investigation of the accusations, although the extent of the investigation is not clear from the record. In September 1989, a Department of Justice attorney filed criminal charges against Rivera in the Superior Court of Puerto Rico, alleging six separate counts of aggravated unlawful appropriation in violation of Article 166 of the Puerto Rico Penal Code, 33 L.P.R.A. 42721 and two  ____________________ 1. 33 L.P.R.A. 4272 provides, in relevant part: -3- counts of forgery of documents in violation of Article 271, 33 L.P.R.A. 45912 all felonies. The charges accused Rivera, in essence, of depositing in the J.A.R. bank account six checks written by customers as payment for Normeat merchandise and not transferring the payments, minus  ____________________ Any person committing the offense described in section 4271 of this title [Unlawful Appropriation] shall be punished by imprisonment for a fixed term of ten (10) years, whenever the following circumstances exist: . . . (b) Unlawfully appropriating the property of another valued at two hundred dollars or more; . . . . 33 L.P.R.A. 4271, referred to in section 4272, provides: Any person who unlawfully appropriates, without violence or intimidation, personal property belonging to another person, shall be punished by imprisonment for a term not exceeding six months, a fine not exceeding five hundred dollars, the penalty of restitution, or any combination thereof, in the discretion of the court. 2. 33 L.P.R.A. 4591 provides in relevant part: Any person who, with the intent to defraud another, falsely draws up, in whole or in part, a document, instrument or writ through which any right, obligation or interest is created, transferred, terminated or otherwise affected, or who falsely alters, counterfeits, suppresses or destroys a genuine one in whole or in part, shall be punished by imprisonment for a fixed term of nine (9) years. . . . -4- J.A.R.'s sales commission, to Normeat.3 A Superior Court judge found probable cause to issue an arrest warrant for Rivera on all eight charges, and referred the case to three different courts for preliminary hearings because the alleged crimes took place in three different jurisdictions. Three magistrates separately considered the charges and found probable cause to proceed to trial on six of the eight charges. One aggravated unlawful appropriation count and one forgery count, both relating to a November 12, 1986 check for $59,274.12 from a company called Mister Price, were dismissed for lack of probable cause.4  ____________________ 3. The six counts of aggravated unlawful appropriation were based on the following transactions: 1) a November 12, 1986 check for $59,274.12 from Mister Price, Division of Belca Equipment Corporation, payable to Normeat; 2) a November 22, 1986 check for $60,557.41 from Pueblo International, Inc. payable to J.A.R.; 3) a December 29, 1986 check for $61,337.16 from Mister Price payable to Normeat; 4) a February 10, 1987 check for $30,645.15 from Alba Imports Corporation payable to J.A.R.; 5) a March 24, 1987 check for $58,674.96 from Alba Imports payable to J.A.R.; and, 6) an April 22, 1987 check for $30,646.67 from Alba Imports payable to J.A.R. The two counts of forgery were based on the two checks made payable to Normeat. 4. In the district court, appellants submitted copies of a cancelled check purporting to show that J.A.R. did in fact pay Normeat $57,495.90 for the Mister Price shipment a few months after receiving the $59,274.12 check from Mister Price. -5- The remaining counts were consolidated for trial at the San Juan Superior Court. After one day of testimony on February 21, 1990, the main prosecution witness, Rasmussen, left Puerto Rico for Denmark and never returned to the island. The prosecutor moved for dismissal of the criminal charges, and the court granted dismissal with prejudice on February 26, 1990. The dismissal is now final and unappealable. Rivera, along with his wife and their conjugal partnership, brought this diversity action against Normeat on November 26, 1990, in the United States District Court for the District of Puerto Rico, seeking damages pursuant to Puerto Rico tort law for the alleged malicious prosecution of Rivera by Normeat. Normeat moved to dismiss for failure to state a claim. See Fed. R. Civ. P. 12(b)(6). Because it had ___ numerous exhibits before it from both parties, the district court treated Normeat's motion as one for summary judgment and granted it on April 21, 1992. See Fed. R. Civ. P. 56. ___ Appellants now appeal from that final judgment.5 II. II. We review summary judgment grants de novo, reading __ ____ the record in the light most favorable to the nonmoving party. August v. Offices Unlimited, Inc., 981 F.2d 576, 580 ______ ________________________  ____________________ 5. The district court had diversity jurisdiction pursuant to 28 U.S.C. 1332(a)(2). This court has jurisdiction pursuant to 28 U.S.C. 1291. -6- (1st Cir. 1992). To demonstrate the existence of a genuine issue of material fact, plaintiffs must point to concrete, admissible evidence. Id. Mere allegations, or conjecture ___ unsupported in the record, are insufficient. Id. ___ Under Puerto Rico law, a plaintiff, such as appellant, alleging malicious prosecution bears the burden of proof. Vince v. Posadas de Puerto Rico S.A., 683 F. Supp. _____ ____________________________ 312, 315 (D.P.R. 1988); Par s v. Ruiz, 19 P.R.R. 323, 327 _____ ____ (1913). The four essential elements of the tort are: (1) the criminal action was initiated and instigated by the defendant; (2) the criminal action terminated in favor of the plaintiffs; (3) the defendant initiated the action with malice and without probable cause; and (4) as a consequence, the plaintiffs suffered damages. Ocasio v. Rosa, 88 J.T.S. ______ ____ 42 (P.R. 1988); Par s, 19 P.R.R. at 327. The third element _____ may also be described as two separate elements because plaintiffs must show both that the defendant acted with ____ malice and that he acted without probable cause. Vince, 683 ___ _____ F. Supp. at 315 & n.4. Failure to prove any element bars recovery. Id. at 315-16; Torres v. Marcano, 68 P.R.R. 813, ___ ______ _______ 817 (1948); Par s, 19 P.R.R. at 332. _____ The district court granted summary judgment for appellee Normeat on the ground that nothing in the record supports a finding that Normeat acted without probable cause. "[P]robable cause for imputing the commission of a crime -7- consists in the fact that there are reasonable grounds therefor, supported by circumstances which are sufficient to warrant a reasonable belief that the defendant is the author of the crime." Jim nez v. S nchez, 76 P.R.R. 347, 352 _______ _______ (1954); see Vince, 683 F. Supp. at 316; Par s, 19 P.R.R. at ___ _____ _____ 331. Probable cause does not depend on the actual guilt or innocence of the accused, but simply on whether the circumstances are "sufficient to produce in the mind of a reasonable person the belief that the charge he makes is true." Par s, 19 P.R.R. at 331. _____ In respect to five of the six transactions, appellants pointed to no evidence tending to establish that Normeat lacked probable cause to accuse Rivera of misappropriating and forging the alleged checks. The record indicates that Rivera received those five checks from customers and deposited them in the J.A.R. bank account, but nothing shows that he forwarded the paid amounts, minus his commission, to Normeat. In addition, the record shows that the Department of Justice attorney, after an investigation, found probable cause sufficient to file the charges against Rivera, and a Superior Court judge found probable cause on all eight charges sufficient to issue an arrest warrant for Rivera. Three different magistrates, in separate preliminary hearings, found that evidence on the counts related to these five transactions was sufficient to send the case to trial. -8- Because appellants failed to produce any evidence that Normeat lacked probable cause to prosecute Rivera based on those five checks, appellants would not be able to maintain a claim for malicious prosecution based on those charges. Appellants instead focus on the two charges dismissed after a preliminary hearing before a magistrate, both of which were related to the November 12, 1986 check from the Mister Price company in the amount of $59,274.12. Appellants argue that Normeat lacked probable cause to accuse Rivera of misappropriating and forging this particular check. The record contains a cancelled check purportedly showing that on February 13, 1987, J.A.R. paid Normeat $57,495.90, the balance due for the shipment of goods to the Mister Price company, and a sworn statement from Rivera asserting that J.A.R. paid Normeat for the Mister Price shipment. Whether and in what circumstances a plaintiff may maintain a malicious prosecution action based on one groundless accusation, when probable cause existed for one or more other accusations made concurrently, has never been addressed by the Puerto Rico Supreme Court. In other jurisdictions, courts have permitted such actions if the charges stem from different sets of facts and if all the other elements of a malicious prosecution claim are fulfilled. See, e.g., Posr v. Doherty, 944 F.2d 91, 100 (2d ___ ____ ____ _______ Cir. 1991) (holding that plaintiff could maintain malicious -9- prosecution claim based on groundless charges of resisting arrest and assault even if probable cause existed for disorderly conduct charge); Singleton v. Perry, 289 P.2d 794, _________ _____ 799-800 (Cal. 1955) ("[P]laintiff, having shown that defendant maliciously joined an unjustified charge with a justified charge, does not have the further burden of showing that her damage was specifically attributable to the malicious prosecution as opposed to the prosecution which the jury found was not malicious."); see also DeLaurentis v. City ________ ___________ ____ of New Haven, 597 A.2d 807, 821-22 (Conn. 1991) (reviewing _____________ cases). But see Ruff v. Eckerds Drugs, Inc., 220 S.E.2d 649, _______ ____ ___________________ 651-52 (S.C. 1975) ("[A]n action for malicious prosecution should not be available, where, as here, both charges arise out of the same set of circumstances."). In Rivera's case, even if he has presented evidence sufficient to raise a genuine issue of fact concerning the lack of probable cause for the two charges related to the November 12, 1986 check from Mister Price, there is no evidence to support the first essential element of malicious prosecution: to wit, that Normeat, as opposed to the state __ ___ prosecutors, initiated and instigated these two particular charges.6 See Raldiris v. Levitt & Sons of Puerto Rico, ___ ________ _______________________________  ____________________ 6. The district court did not consider the issue of instigation of the prosecution, but we are free to affirm on any independently sufficient ground. Aunyx Corp. v. Canon ___________ _____ U.S.A., Inc., 978 F.2d 3, 6 (1st Cir. 1992), cert. denied, ____________ ____________ 113 S. Ct. 1416 (1993). -10- Inc., 103 D.P.R. 778, 3 P.R. Sup. Ct. Off'l Translations ____ 1087, 1091-92 (1975). As discussed above, under Puerto Rico law a malicious prosecution plaintiff must show that: [the] defendant was actively instrumental in the initiation of the prosecution through some affirmative action by way of advice, petition, encouragement or pressure. To furnish information to a prosecuting attorney does not by itself constitute an instigation, since generally in those cases the efficient cause of the initiation of the prosecution has been the initiative and decision of the prosecuting attorney, in the exercise of his discretion, after having carried out the corresponding investigation. Jim nez v. S nchez, 76 P.R.R. at 351. Where the decision to _______ _______ file charges is within the discretion of the prosecutor, it is not sufficient for plaintiffs merely to show that the defendant gave incomplete information to the prosecutor. Plaintiffs must show that the incomplete information caused or "compelled" the government authorities to file charges against the plaintiff. Torres v. Marcano, 68 P.R.R. at 818- ______ _______ 20. Unless the defendant is shown to have knowingly provided false information to the officials, "[t]he exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings." Id. at 819 (quoting 3 Restatement (First) of ___ _______________________ Torts 653(2), cmt.). _____ -11- The record contains no evidence that Rasmussen or other Normeat officials specifically instigated the charges based on the November 12, 1986 check, nor that they were the source of incomplete or false information to the state officials on that item. The record indicates only that Rasmussen gave a sworn statement to the prosecuting attorneys regarding the failure of J.A.R. to turn over one or more payments due to Normeat, a perfectly true statement insofar as anything in the record shows. No actual copy of the sworn statement appears in the record, nor is there an affidavit from Rasmussen or a prosecutor indicating exactly what Rasmussen told the prosecutors. Appellants concede that the prosecutors conducted an investigation of J.A.R.'s dealings with Normeat and that a Department of Justice attorney, not Rasmussen, filed the formal charges in court against Rivera. It is conceivable that the two charges related to the November 12, 1986 check resulted from oversights or errors by personnel within the Department of Justice rather than from specific accusations relative to that check made by Rasmussen. Appellants bear the burden of proof on the issue but have put forward no concrete evidence to show that Rasmussen gave inaccurate or incomplete information to the authorities about this check nor that he coerced them into filing the charges in question against Rivera. Consequently, even if appellants raised a genuine issue regarding lack of -12- probable cause for the charges based on the November 12, 1986 check, appellants failed to raise a genuine issue over whether Normeat initiated or instigated those two charges. Appellants would be unable at trial to meet their burden of proof on an essential element of their malicious prosecution claim.7 Affirmed. Costs to appellee. ________ _________________  ____________________ 7. We have considered and find no merit in the rest of appellants' arguments. -13-