USCA1 Opinion

 

 [NOT FOR PUBLICATION] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 93-1459 JAY DOOLEY, Plaintiff, Appellant, v. PARKER-HANNIFIN CORPORATION, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ Amato A. DeLuca with whom Mandell, DeLuca & Schwartz, Ltd. _______________ _________________________________ was on brief for appellant. Raymond A. LaFazia with whom Kevin S. Cotter and Gunning, __________________ ________________ ________ LaFazia & Gnys, Inc. were on brief for appellees. ____________________ ____________________ October 21, 1993 ____________________ Per Curiam. In this appeal, plaintiff-appellant ____________ Jay Dooley claims that the district court erred in granting defendant-appellee Parker-Hannifin Corporation ("Parker- Hannifin")1 summary judgment on the issues of negligence, breach of warranty and strict liability. Finding no error, we affirm. I. I. __ Standard of Review Standard of Review __________________ Our review of summary judgment decisions is de __ novo, reading the record in the light most favorable to the ____ non-moving party. See, e.g., Rivera-Marcano v. Normeat Royal ___ _____ ______________ _____________ Dane Quality A/S, 998 F.2d 34, 37 (1st Cir. 1993)(citing _________________ August v. Offices Unlimited, Inc., 981 F.2d 576, 580 (1st ______ ________________________ Cir. 1992)). Summary judgment is appropriate only when "there is no genuine issue as to any material fact" based upon the pleadings, depositions, and affidavits, and where "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a fact is material, a court must consider whether it has the "potential to affect the outcome of the suit under applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 ________________ ______________ (1st Cir. 1993). While we will "indulge all reasonable inferences" in the nonmovant's favor, Santiago v. Sherwin ________ _______ ____________________ 1. References to Parker-Hannifin apply equally to all named appellees. -2- 2 Williams Co., No. 92-2263, slip op. at 8 (1st Cir. Sept. 10, ____________ 1993), we will not consider "`conclusory allegations, improbable inferences, and unsupported speculation.'" Dow v. ___ United Bhd. of Carpenters and Joiners, 1 F.3d 56, 58 (1st _______________________________________ Cir. 1993)(quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., ____________ _________________________ 896 F.2d 5, 8 (1st Cir. 1990)). II. II. ___ Factual Background and Prior Proceedings Factual Background and Prior Proceedings ________________________________________ Parker-Hannifin is a supplier, inter alia, of _____ ____ aeronautics parts to the United States Government. Prior to 1986, Parker-Hannifin contracted with American Tube Bending Co. ("ATB") for tubing to be processed and delivered to Parker-Hannifin in accordance with government-issued specifications. ATB, or some entity acting under its direction, designed and manufactured2 a holding die which fit into a hydraulic press machine owned by ATB. This die was used to bend and form the tubing in accordance with the government specifications. In 1986, Tubodyne Company acquired this holding die,3 as well as ATB's press machine ____________________ 2. There is no evidence regarding who manufactured or designed the original die. It is conceded, however, that the work was performed either by ATB or at ATB's direction, and not by Parker-Hannifin. 3. Dooley contends that the die is owned by Parker-Hannifin. Although there is ample evidence in the record to show that Tubodyne passes both its cost of producing the dies and ownership on to its customers, there is no evidence that ATB had the same practice. Parker-Hannifin denies ownership and offers in evidence the fact that it never listed the die as -3- 3 when ATB sold Tubodyne its assets and customer lists. Parker-Hannifin subsequently became a customer of Tubodyne. By 1988, due to normal wear and tear, the holding die was not gripping the metal tubing effectively. Tubodyne informed Parker-Hannifin of the problem and a representative of Parker-Hannifin observed the worn die. Parker-Hannifin then allegedly approved an extension to the die which was supposed to result in a better grip of the material to be formed.4 Parker-Hannifin did not have any part in the design or manufacture of the actual extension.5 Viewed in the light most favorable to the plaintiff, the evidence shows that Parker-Hannifin approved Tubodyne's plan 1) to alter the die as Tubodyne saw fit; and 2) to pass the cost on to ____________________ an asset of the company. We need not solve this controversy, however, since we do not find ownership to be a material fact ________ in this dispute. 4. There is no direct evidence of this approval. The only evidence on record is Dooley's contention that the president of Tubodyne, Norman MacLeod, Jr., told Dooley that Parker- Hannifin's approval was necessary before he could add an extension, and the deposition testimony of Tubodyne's general manager, Jeanie Juckett, who stated that although she did not remember any specific conversation with Parker-Hannifin, she "assumed that they gave their blessing since we did put the extensions [sic] on." 5. Dooley argues that Parker-Hannifin's approval of the idea of an extension, without more, amounts to its having "played a significant role in the design and manufacture of the extension." While we must recount the facts in the light most favorable to the nonmoving party, we are not compelled to credit conclusory allegations unsupported by the record. See Dow, 1 F.3d at 58. ___ ___ -4- 4 Parker-Hannifin.6 Tubodyne, or some entity under its direction, then designed and manufactured the extension.7 On June 30, 1988, Jay Dooley, an experienced Tubodyne employee, was assigned to form aircraft exhaust duct tubing for Parker-Hannifin. After attaching the die with the newly designed extension to the press machine, he became concerned that the extension and the machine created a potentially dangerous pinch point. Although Dooley complained to Tubodyne management about the possible risk of injury, he nevertheless operated the machine and crushed his thumb between the extension and the press machine. In June of 1991, Dooley commenced a diversity action against Parker-Hannifin, alleging negligence, breach of implied and express warranties and strict tort liability. Parker-Hannifin subsequently filed a motion for summary judgment which the district court granted. The district court found that Parker-Hannifin was not negligent because it did not owe a duty to Dooley, and was not liable under ____________________ 6. However, once again, there is no direct evidence to show that Tubodyne ever charged Parker-Hannifin for the extension. Although Juckett and MacLeod stated in their depositions that it is their usual practice to charge for such modifications, the plaintiff was not able to produce an invoice charging Parker-Hannifin for the extension. 7. Neither MacLeod nor Juckett could remember if the extension was manufactured in-house or outside, at Tubodyne's direction. -5- 5 warranty or strict liability theories because Parker Hannifin was not the seller of the die or its extension. Dooley now appeals from that final judgment. III. III. ____ Discussion Discussion __________ Dooley argues on appeal that the district court applied the wrong standard in determining whether Parker- Hannifin owed him a duty of due care. More specifically, Dooley claims that Parker-Hannifin was negligent by failing to ensure that the die and extension were safe for their intended use. He asserts that this duty stems from the fact that: (1) Parker-Hannifin allegedly owned the die and the extension; (2) an agent of Parker-Hannifin allegedly observed the die malfunction before the extension was added; and (3) an agent of Parker-Hannifin allegedly approved the addition of the extension. Dooley further argues that the district court erred in finding that no issue of material fact exists on the issues of breach of warranty and strict liability. We address each argument in turn. A. Negligence A. Negligence ______________ In order to make out a viable negligence claim under Rhode Island law,8 one must first establish, as a matter of law, that a duty exists. See Banks v. Bowen's ___ _____ _______ ____________________ 8. The parties do not dispute that Rhode Island law applies in this diversity action. -6- 6 Landing Corp., 522 A.2d 1222, 1224 (R.I. 1987)(citing Barratt _____________ _______ v. Burlingham, 492 A.2d 1219, 1220 (R.I. 1985)); Welsh Mfg., __________ ___________ Div. of Textron, Inc. v. Pinkerton's, Inc., 474 A.2d 436, 440 _____________________ _________________ (R.I. 1984). The Rhode Island Supreme Court has stated: In considering whether a duty exists, among the factors considered are (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach. Banks, 522 A.2d at 1225.9 In light of these factors and the _____ ____________________ 9. Dooley argues that the standard announced in Banks is _____ "inapposite to the present matter." In so doing, he cites a line of cases delineating duties owed by manufacturers, designers, sellers, suppliers and lessors of goods. Because Parker-Hannifin does not fit into any of these categories, we find these cases, rather than Banks, to be inapposite. _____ Dooley also urges us to apply Barron v. Honeywell, Inc., ______ _______________ 69 F.R.D. 390 (E.D. Pa. 1975) and to reverse the district court on this basis. Even if we were to find Barron, which ______ applied Pennsylvania law, to be persuasive authority, it is clearly distinguishable from the instant matter. In denying a motion for summary judgment, the court in Barron found that ______ the defendant, the owner of a defective plastics machine, had leased the machine to a plastics manufacturer. The court ______ further noted that the defendant, who also bought plastic parts from the lessee, had required the manufacturer to use the malfunctioning machine to produce his parts even though the defendant had observed the machine malfunction on at least two separate occasions. Id. at 392. The present ___ situation, however, is very different. There is no evidence that an agent of Parker-Hannifin ever saw the extension on or off the machine. Dooley points to his own deposition for support of the proposition that an agent saw the die malfunction before the extension was added. However, there ______ is no allegation that the die was dangerous before the _________ -7- 7 record evidence, we agree with the district court that Parker-Hannifin, which did not design, manufacture, sell or control the die extension, owed no duty to Dooley. As noted earlier, Parker-Hannifin's only connections to Dooley's injury10 were its approval and alleged ownership of the die extension. We find neither factor sufficient to support a duty for negligence purposes in this case. Parker-Hannifin never possessed or controlled the extension that Tubodyne, Dooley's employer, designed to fit its own press machine. It is not alleged that Parker- Hannifin ever saw the extension or knew how it would fit or operate in Tubodyne's machinery. Accordingly, we do not find that the injury to Dooley was a foreseeable consequence of any action on the part of Parker-Hannifin.11 Nor do we find a close connection between Parker- Hannifin's approval of the extension and Dooley's injury. Several factors, such as Tubodyne's design of the extension, Dooley's prior knowledge of the potentially dangerous condition, and Tubodyne's insistence that Dooley operate the machine despite Dooley's perception of the inherent danger, ____________________ extension was added. Thus, if the agent saw anything, it was only that the die did not properly grip the metal. Dooley does not argue, nor could he on the record before us, that the malfunction that the agent allegedly saw was the proximate cause of his injury. 10. Neither party disputes the actuality of Dooley's injury. 11. See generally supra note 9. ___ _________ _____ -8- 8 intervened and served to distance an already remote relationship. See Banks, 522 A.2d at 1225. ___ _____ Finally, we do not believe that imposing a duty upon Parker-Hannifin, on this record, could possibly further a policy of preventing future harm. On the contrary, as aptly noted by the district court, holding Parker-Hannifin responsible for protecting employees it did not employ from risks of injury associated with the use of machines it did not design, manufacture, sell or control would be "unreasonable and would impose a substantial burden on Parker-Hannifin without any commensurate decrease in the risk of future injuries." Dooley v. Parker-Hannifin Corp., 817 ______ _____________________ F. Supp. 245, 247 (D.R.I. 1993). By their own admissions, before any injury occurred, both Dooley and Tubodyne were aware of the potentially dangerous condition created by the interaction between the extension Tubodyne designed and their machine which Dooley operated. They were in a position to prevent this injury. Parker-Hannifin was not. Accordingly, we find no duty and affirm the district court's finding that Parker-Hannifin was not negligent. B. Breach of Warranty B. Breach of Warranty ______________________ Although Rhode Island has a significant body of law regarding warranties, that law deals exclusively with -9- 9 warranties made by "sellers."12 Here, Dooley concedes that Parker-Hannifin is not the seller of the die or its extension. Nonetheless, he urges this court to expand Rhode Island law and find that Parker-Hannifin, though a non- seller, had extended a warranty to the plaintiff. Leaving aside the merits of plaintiff's highly dubious proposition, we reiterate that "a plaintiff who `selects a federal forum in preference to an available state forum may not expect the federal court to steer state law into unprecedented configurations.'" Santiago, No. 92-2263, slip op. at 9 ________ (quoting Martel v. Stafford, 992 F.2d 1244, 1247 (1st Cir. ______ ________ 1993)). Here, the reading Dooley seeks would, to say the least, be a significant expansion of state law. Accordingly, we affirm the district court's grant of summary judgment on this issue. C. Strict Liability C. Strict Liability ____________________ Appellant's strict liability claim is equally meritless. In Rhode Island, strict liability applies to "[o]ne who sells any product in a defective condition." _____ Restatement (Second) Torts, 402A (1965)(emphasis supplied); ____________________ 12. Under Rhode Island law, there is a warranty of merchantability implied in contracts where the "seller" is a merchant with respect to goods of the type sold. R.I. Gen. Laws 6A-2-314 (1992). Express or implied warranties may arise when a "seller" makes representations about a product. R.I. Gen. Laws 6A-2-313 (1992). Finally a "seller" may be held liable for personal injuries which are the proximate result of a breach of warranty. R.I. Gen. Laws 6A-2- 715(2)(b)(1992). -10- 10 see also Ritter v. Narragansett Elec. Co., 283 A.2d 255 ___ ____________ _______________________ (1971) (adopting Restatement (Second) Torts, 402A). Here, as has been noted, Parker-Hannifin is not a seller of dies or extensions. Thus, there is no basis under Rhode Island law for holding it liable in strict liability. IV. IV. ___ Conclusion Conclusion __________ For the reasons set forth above, we affirm the district court's grant of summary judgment. Affirmed. Affirmed. ________ -11- 11